United States District Court
Southern District of Texas
**ENTERED**
May 19, 2020
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD VASQUEZ ORONA, #0426047, | § § § | |
| *Petitioner*, | § § | |
| v. | § § | CIVIL ACTION NO. H-19-0681 |
| LORIE DAVIS, | § § § | |
| *Respondent*. | § | |

## <u>OPINION ON DISMISSAL</u>

Richard Vasquez Orona filed a petition for a writ of habeas corpus by a person in state custody under 28 U.S.C. § 2254. The Court ordered Respondent to answer the petition. Respondent filed a motion for summary judgment stating that Petitioner's claims are not cognizable on federal habeas review.

## I.    Background and Claims

On July 3, 1986, Petitioner was sentenced to ninety-nine years' imprisonment for murder in case number 0243559D in the 2nd Criminal District Court of Tarrant County, Texas.[1]  *See* Dkt. #15-2.  On September 12, 2018, Petitioner was reviewed for release on parole by the Texas Board of Pardons and Paroles (hereinafter, "the Board").  *Id.*   The Board denied Petitioner's release

---

[1] Because Petitioner's claims do not relate to this judgment, the Court does not discuss the procedural history that followed his sentencing.

stating that his offense had "elements of brutality, violence, assaultive behavior, or conscious selection of victim's vulnerability" that indicated a "continuing threat to society." *Id.* Petitioner filed a state application for a writ of habeas corpus on September 5, 2018, that did not challenge the denial of parole, but instead challenged his good-time credit calculation and the procedures used to calculate those credits. *See* Dkt. #14-5. The Texas Court of Criminal Appeals denied the state application without written order or hearing on November 7, 2018. *See* Dkt. #14-3. Petitioner's projected mandatory supervised release date is July 2021. *Id.*

On February 21, 2019, Petitioner filed the instant petition. The petition states five ground for relief.[2] First, Petitioner alleges that the Board erroneously miscalculated his good-time credits towards his mandatory supervised release. Dkt. #1 at 6. Second, Petitioner alleges that the 65th Texas Legislature enacted a statute that is disadvantageous to Petitioner, and that the 74th Texas Legislature enacted a statute that would earn him additional good-time credits. *Id.* Petitioner states that being subjected to a disadvantageous good-time credit earning scheme amounts to a violation of the *Ex Post Facto* Clause. *Id.* Third, Petitioner alleges that good-time credits for parole and mandatory supervised release are earned at the same rate. *Id.* at 7. Fourth, Petitioner alleges that the Prison Management Act (hereinafter, "the PMA") violates the Texas and United States Constitutions as to

---

[2] Petitioner's claims largely consist of legal conclusions. *See generally* Dkt. #1. The Court construes the claims to reflect the most obvious and direct claims for relief based upon Petitioner's allegations.

how it applies administrative good-time credits. *Id.* Petitioner says that he has a liberty interest in any good-time credits after the credits are earned. *Id.* Similarly, in his fifth claim, Petitioner alleges that he was deprived administrative good-time credits through an unconstitutional retroactive application of the PMA. *Id.* at 8.

Respondent argues that he is not eligible for mandatory supervised release until 2021, and that he has only been denied parole. *See* Dkt. #15 at 17. Respondent construes his claims, therefore, as addressing the denial of parole. Respondent argues that his claims are not cognizable on federal review because he does not have a liberty interest in the denial of parole or in the amount of time that he accrues his good-time credits.

## II.   Standard of Review

Under AEDPA, a "[c]ourt may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002) (citing 28 U.S.C. § 2254(d)(1)-(2)). Under 28 U.S.C. § 2254(e)(1), a determination of a factual issue made by a state court is presumed to be correct,

3

and the habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014). State courts are not required to explain their appellate or habeas decisions to be entitled to AEDPA deference, which means that, when the claims are adjudicated on the merits, section 2254(d) applies even if the state court summarily denied relief. *Cullen v. Pinholster*, 563 U.S. 170, 187-88 (2011); Harrington v. Richter, 562 U.S. 86, 100 (2011).

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.*

In deciding a summary judgment motion, the reviewing court ordinarily must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citation and internal quotation marks omitted). A federal habeas court applies general summary judgment standards only to the extent they do not conflict with the AEDPA. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) ("[Rule 56]

applies only to the extent that it does not conflict with the habeas rules."),
abrogated on other grounds by *Tennard v. Dretke*, 542 U.S. 274 (2004). The
presumption of correctness in 28 U.S.C. § 2254(e)(1) overrides the ordinary
summary judgment rule that disputed facts must be construed in the light most
favorable to the nonmoving party.

### III.   Discussion

As an initial matter, the Court declines to adopt Respondent's contention
that Petitioner actually refers to the decision made by the Board to deny him
parole.  First, Petitioner clearly states that he has a liberty interest in mandatory
supervised release.  Petitioner also states multiple times that his claims pertain to
the accrual of good-time credits applied to mandatory supervised release, which
allegedly has been improperly denied.  Second, the Court, by construing his claims
as relating to parole, would force the petition to be dismissed under a procedural
bar because Petitioner did not bring claims pertaining to parole in the state habeas
court.  The Court may construe claims, but cannot not fundamentally alter them.
Third, this determination does not ultimately affect Respondent's argument as to
Petitioner's claims and leaves Respondent in no worse litigative position.
Nonetheless, for the reasons below, the claims are dismissed.

### A. State habeas Court's Findings of Fact and Conclusions of Law

The state habeas court, by adopting the State's proposed memorandum of

findings of fact and conclusions of law, found that Petitioner is eligible for release to mandatory supervision on July 18, 2021, and that he presented no evidence to support his claims that his release date on mandatory supervised release has been miscalculated or that it has been previously denied. *See* Dkt. #14-5 at 95. The state habeas court also found that Petitioner presented no evidence to support his claims that the TDCJ has applied any statute in violation of the *Ex Post Facto* clause of the United States' Constitution. *Id.*

Based on these findings, the state habeas court determined that Petitioner's claims should be denied. *See id.* at 97. As to the accrual of good-time credits, the state habeas court determined that his claims should be denied because the accrual of good-time credits are based on the law in effect at the time Petitioner is in custody and that these claims are not cognizable on habeas review. *Id.* at 97-98.

### B. Petitioner's Claims

First, Petitioner alleges that the Board erroneously miscalculated his good-time credits towards his mandatory supervised release. Dkt. #1 at 6. Second, Petitioner alleges that the 65th Texas Legislature enacted a statute that is disadvantageous to Petitioner, and that the 74th Texas Legislature enacted a statute that would earn him additional good-time credits. *Id.* Petitioner states that being subjected to a disadvantageous good-time credit earning scheme amounts to a violation of the *Ex Post Facto* Clause. *Id.* Third, Petitioner alleges that good-time

credits for parole and mandatory supervised release are earned at the same rate. *Id.* at 7. Fourth, Petitioner alleges that the Prison Management Act (hereinafter, "the PMA") violates the Texas and United States Constitutions as to how it applies administrative good-time credits. *Id.* Petitioner says that he has a liberty interest in any good-time credits after the credits are earned. *Id.* Similarly, in his fifth claim, Petitioner alleges that he was deprived administrative good-time credits through an unconstitutional retroactive application of the PMA. *Id.* at 8.

Mandatory supervision is a form of early release in Texas, governed by section 508.147(a) of the Texas Government Code, which mandates that "a parole panel shall order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time served plus any accrued good conduct time equals the term to which the inmate was sentenced." Texas law also provides that "good conduct time is a privilege and not a right." TEX. GOV'T. CODE ANN. § 498.003(a) (Vernon 1998). Assignment to a particular time-earning status depends on a wide variety of factors, including how long an inmate has been in the Texas prison system, his disciplinary record, his participation in education and work activities and the Texas good-conduct laws in effect on his offense date. *See* Texas Dept. Crim. Justice Offender Orientation Handbook, II.D. Good Conduct Time (August 1997). However, when a state creates a right to good-time credit, recognizes that its revocation is an authorized sanction for misconduct, and an

inmate has earned good-time credits, the inmate holds an interest under the Fourteenth Amendment to a certain amount of due process to insure that these credits are not arbitrarily abrogated. *See Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000).

Petitioner fails to offer any evidence that the state court made a determination contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States or that the state habeas court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. In fact, Petitioner's claims are almost entirely conclusory and lack factual support in the record. Additionally, Petitioner does not bring claims that are cognizable on federal review because he has not lost good-time credits and his claims are based on a determination of state law.

For example, Petitioner does not state how any change in the statutory good-time credit scheme is a violation of the *Ex Post Facto* Clause. The "*Ex Post Facto* Clause should not be employed for 'the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures.'" *Garner v. Jones*, 529 U.S. 244, 252 (2000). A petitioner must show that that the change in procedures created "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 250. Petitioner simply seeks a statutory

scheme that is more advantageous to him and does not actually address the constitutionality of the scheme that is actually applied to him. In sum, Petitioner ultimately only takes issue with the rate in which he earns good-time credits and by which statutory scheme he earns these credits.

The state habeas court made factual findings about Petitioner's mandatory supervised release date and that he has not been denied mandatory supervised release. The state habeas court found that, based on its factual findings, Petitioner's claims are not cognizable because they are based on a discretionary state statutory scheme to award good-time credits. Therefore, to the extent that Petitioner's claim turns on an application of state law that was resolved against him on state habeas review, "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) (citations omitted). Petitioner does not demonstrate that the State court's decision was erroneous.

Even if it was, it is well established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). While an inmate does

have a cognizable interest in the revocation of good-time credits already earned, the timing of an inmate's release is "too speculative" to support a cognizable claim as to a particular good-time earning status. *See Malchi*, 211 F.3d at 959.

Petitioner does not state that he actually lost good-time credits based on a disciplinary action or other revocation. In fact, the state habeas court made factual findings about Petitioner's mandatory supervised release date and that he has not been denied mandatory supervised release or lost already earned good-time credits. Because these claims are not cognizable on habeas corpus review, Petitioner's claims about the rate and scheme in which he earns good-time credits should be dismissed. Moreover, because Petitioner fails to show that the state habeas court's determination is contrary to clearly established law, his other claims should also be denied. In sum, Petitioner does not show that he has been denied release on mandatory supervision or that his good-time credits have been miscalculated or taken from him in violation of his due process rights. The motion for summary judgment will be granted and the petition will be dismissed.

## IV.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28

U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its [] ruling." *Slack*, 529 U.S. at 484.   Because jurists of reason would not debate whether the ruling in this case was correct, a certificate of appealability will not issue.

## V.     Conclusion

Accordingly, Respondent's motion to dismiss (Dkt. #15) is **GRANTED**. Petitioner's motion to amend his petition (Dkt. #22) is **DENIED** as moot. Petitioner's § 2254 petition is **DISMISSED** with prejudice.   A certificate of appealability will not issue.

SIGNED at Houston, Texas, on _____, 2020.


DAVID HITTNER
UNITED STATES DISTRICT JUDGE

11